IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:05-CR-00097-FL
NO. 7:08-CV-211-FL

| | |
|---|---|
| ANASTACIO TORIBIO-ASCENCIO ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court on a number of filings related to petitioner's 28 U.S.C. § 2255 motion (DE #744). In particular, the court takes up the remaining parts of respondent's motion to dismiss (DE # 758); the Memorandum and Recommendation ("M&R") of United States Magistrate Judge William A. Webb, which recommended granting respondent's motion to dismiss; and petitioner's motion for clarification (DE # 800).[1] Petitioner has objected to the M&R, and the issues raised are now ripe for adjudication. For the reasons that follow, the court ADOPTS the findings and conclusions of the magistrate judge and therefore GRANTS respondent's motion to dismiss (DE #758). Petitioner's motion to vacate (DE #744) is DENIED. Petitioner's motion for clarification (DE #800) is DENIED.

---

[1] Though the filings at docket entries eight hundred and two and eight hundred and three (DE ## 802, 803) appear as motions, these are in fact supplemental memoranda of law submitted in accordance with the court's order at docket entry eight hundred and one (DE # 801).

## BACKGROUND

The circumstances leading up to the filing of petitioner's motion to vacate have already been summarized in the March 9, 2009 M&R and the June 4, 2009 order. In that order, the court granted in part respondent's motion to dismiss and held the remainder in abeyance pending evidentiary hearing. With benefit of the magistrate judge's M&R, the court dismissed all of petitioner's claims except (1) petitioner's claim that trial counsel misinformed him about the possibility of deportation when advising him to plead guilty and (2) petitioner's claim that trial counsel failed to consult with petitioner regarding an appeal or, in the alternative, failed to file notice of an appeal after being requested and promising to do so.

Pursuant to that order, an evidentiary hearing was held July 6, 2009. On July 15, 2009, the magistrate judge entered an M&R, which recommended that the government's motion to dismiss petitioner's two remaining claims be granted. Thereafter, petitioner timely objected to the M&R. Petitioner also filed a motion for clarification of petitioner's sentence on January 22, 2010.

On March 31, 2010, the United States Supreme Court decided Padilla v. Kentucky, which concluded that the "collateral versus direct distinction is . . . ill-suited to evaluating a Strickland claim concerning the specific risk of deportation" and held that "counsel must inform her client whether his plea carries a risk of deportation." 559 U.S. ___, 2010 WL 1222274, at *6, *11 (2010). To aid the court in its consideration of Padilla's effect, if any, on defendant's motion, the court invited additional briefing from the parties on this question, which briefs were submitted by both parties.

## DISCUSSION

A. Standards of Review

In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). To state a claim of ineffective assistance of counsel in the context of a guilty plea, a petitioner must satisfy a two-pronged test. Strickland v. Washington, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. Id. at 688. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Concerning the second prong, a petitioner must show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Petitioner also testified at the plea hearing that he understood that in pleading guilty he was giving up his rights relating to a jury trial. (See tr. of plea, attached to Petition, at 3-5). Absent clear and convincing evidence to the contrary, these representations are conclusive concerning the performance of counsel. Little v. Allsbrook, 731 F.2d 238, 240 (4th Cir. 1984); Via v. Superintendent, 643 F.2d 167, 171 (4th Cir. 1981).

Federal Rule of Civil Procedure 12(b)(6) allows a suit to be dismissed for failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion to dismiss only determines whether a claim is stated; it does not resolve disputed facts, the merits of the claim, or applicability of

3

defenses. Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1356 (1990)). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For the purposes of ruling on a Rule 12(b)(6) motion to dismiss, the court should construe allegations in the complaint as true and in the light most favorable to the petitioner. Republican Party, 980 F.2d at 952.

To assist it in making these determinations, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations," which the court may "accept, reject, or modify, in whole or in part." 28 U.S.C. § 636(b)(1)(B), (C). Where a party objects to the magistrate judge's disposition, the district court reviews *de novo* those portions of the M&R to which specific objections are filed. Id. Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983).

B. Analysis

With benefit of a second M&R, issued after the magistrate judge conducted an evidentiary hearing, this order addresses respondent's motion to dismiss petitioner's two remaining claims. As petitioner's counsel conceded at hearing, this is essentially a factual dispute. Petitioner argues first that trial counsel misinformed him about the possibility of deportation when advising him to plead guilty, and second, that trial counsel failed to consult with petitioner regarding an appeal or, in the alternative, failed to file notice of an appeal after being requested and promising to do so.

4

1. Petitioner's Objections to the M&R

As an initial matter, the court notes that petitioner's first set of objections to the M&R, filed by his counsel, consisted of one paragraph and elucidated only that "[i]t is the position of the Petitioner that the deportation issue was material and the entry of plea would not have been entered into absent representations with regard to the same." (Pet.'s Objs.) Thereafter, petitioner's counsel filed supplemental objections in the form of a handwritten letter from petitioner that raises a number of specific objections to the M&R. While petitioner's counsel's objections are not specific objections to the M&R entitled to *de novo* review, petitioner's handwritten letter, incorporated into the objections by attachment, does raise sufficiently specific objections. This court will thus review *de novo* all portions of the M&R specifically objected to by petitioner in his handwritten letter.

   a.  Failure of Counsel to File Notice of Appeal and/or Consult

Petitioner argues that Mr. Ramos, his trial counsel, was ineffective because he failed to consult with petitioner regarding an appeal. At the least, "counsel is under a professional obligation to 'consult' with the defendant regarding that fundamental decision, unless the circumstances demonstrate that consultation is unnecessary." Frazer v. South Carolina, 430 F.3d 696, 707 (4th Cir. 2005) (citing Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000)). "[T]he term 'consult' . . . convey[s] a specific meaning – advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Flores-Ortega, 528 U.S. at 478. This duty to consult arises "when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.

The magistrate judge found "that Petitioner did not specifically request Mr. Ramos to file a notice of appeal," and "that Mr. Ramos failed to consult with Petitioner regarding a potential appeal," and that the question was then whether consultation was necessary under Flores-Ortega. (M&R at 3, 4.) The magistrate judge held that such consultation was not necessary under Flores-Ortega, and thus Mr. Ramos satisfied his duty of representation in this respect. First, the magistrate judge found there is no reason to think a rational defendant would have wanted to appeal because petitioner's grounds for appeal were already found meritless, and petitioner was sentenced at the bottom of the sentencing guidelines range. Second, based on petitioner's testimony at hearing, the magistrate judge found "that Petitioner did not reasonably demonstrate to Mr. Ramos that he was interested in appealing." (M&R at 5-6.) The magistrate judge relied in part on defendant's plea of guilty and waiver of appellate rights as evidence that further consultation was not necessary.

A review of the hearing transcript supports the magistrate judge's finding that Mr. Ramos satisfied the duty to consult petitioner regarding an appeal. First, because petitioner's grounds for appeal were found meritless and he was sentenced at the bottom of the guidelines, there was no reason to believe a rational defendant would desire an appeal. Petitioner objects, claiming that Mr. Ramos never discussed an appeal with him, though Mr. Ramos testified that he "[a]bsolutely" discussed petitioner's appeal rights with petitioner before he signed the plea agreement. (Tr. at 15.) In the plea agreement, petitioner knowingly waived his appellate rights, which reasonably led Mr. Ramos to believe that petitioner did not desire an appeal.

Second, petitioner did not demonstrate to counsel that he was interested in appealing. Petitioner testified that he did not ask Mr. Ramos to appeal his conviction or sentence until 2008 or 2009, when he found out he was subject to deportation. Indeed, petitioner concedes that he "never

6

wanted to appeal until served [with] deportation order." (Pet.'s Objs. 1.) Furthermore, petitioner pleaded guilty and knowingly waived his appellate rights. Absent clear and convincing evidence to the contrary, these representations are conclusive concerning the performance of counsel. Little v. Allsbrook, 731 F.2d 238, 240 (4th Cir. 1984); Via v. Superintendent, 643 F.2d 167, 171 (4th Cir. 1981).

    b. Counsel's Advice to Petitioner Regarding Deportation

Petitioner argues his counsel was ineffective for "grossly misinform[ing] Petitioner about the possibility of deportation when advising him to plead guilty." (M&R at 1-2.) At the time of petitioner's plea and the March 9, 2009 M&R, his counsel was required to make him aware "of all the 'direct,' but not the 'collateral' consequences of his plea." Meyer v. Branker, 506 F.3d 358, 367-68 (4th Cir. 2007). In the Fourth Circuit, potential deportation was deemed a "collateral" consequence of a plea. United States v. Yearwood, 863 F.2d 6, 7-8 (4th Cir. 1988). This standard was changed earlier this year, when the Supreme Court held the "collateral versus direct distinction is . . . ill-suited to evaluating a Strickland claim concerning the specific risk of deportation" and that "counsel must inform her client whether his plea carries a risk of deportation." Padilla, 559 U.S. ___, 2010 WL 1222274, at *6, *11. Thus, the failure to inform a client of the possibility that his guilty plea makes him subject to deportation is now a violation of the client's right to adequate representation.

It is unclear whether Padilla applies retroactively. There is a question as to whether Padilla announced a "new rule," or whether it was simply an application of Strickland to a particular set of

7

fact.[2] Petitioner argued in pertinent part that his counsel was ineffective for "grossly misinform[ing] Petitioner about the possibility of deportation when advising him to plead guilty." (M&R at 1-2.) Thus, if Padilla were to apply retroactively to Mr. Ramos's representation of petitioner, his counsel would be ineffective if he did not inform petitioner of the immigration consequences of his plea.

In this case, however, the particular facts make such a determination unnecessary. Assuming *arguendo* that Padilla does apply retroactively, petitioner's claim would still fail as a result of the finding that Mr. Ramos likely did inform petitioner of the immigration consequences of his plea. The magistrate judge resolved a testimonial conflict as to whether Mr. Ramos did in fact inform petitioner of the immigration consequences of his guilty plea "by finding Mr. Ramos' testimony credible and Petitioner's testimony incredible." (M&R at 10.)

A review of the hearing transcript supports this finding. At hearing, Mr. Ramos testified to almost thirty (30) years' experience in practicing criminal law and a "practice or custom" of notifying clients who do not appear to be citizens "that upon conviction of most offenses . . . they are going to be deported." (M&R at 9 (quoting tr. at 11-12).) He estimated that he has represented a non-citizen one hundred (100) times. Mr. Ramos recalled that he customarily informs his clients of these consequences before they enter a plea agreement. Mr. Ramos noted that petitioner was concerned about his immigration status, that he "did talk with [petitioner] about [the immigration consequences of a guilty plea]," and that he even represented petitioner at "a rather lengthy detention hearing where we actually put on some of his family to persuade the judge . . . to release him." (M&R at 9-10 (quoting tr. at 13).) Mr. Ramos also directly disputed petitioner's claims that he told

---

[2] Though the parties did submit briefs summarizing Padilla's holding, neither party analyzed whether or how Padilla's holding should apply retroactively to this case.

8

petitioner a guilty plea would not subject him to deportation and that Mr. Ramos assured petitioner that the prosecuting attorney agreed not to deport petitioner as a result of his guilty plea. Based on all of this testimony, the court finds that Mr. Ramos likely did notify petitioner of the immigration consequences of the guilty plea.

In petitioner's objections to the M&R, he argues that the prosecuting attorney agreed not to deport petitioner in exchange for a guilty plea, and that the government has reneged on this promise. For a number of reasons, the court finds this assertion not credible. Petitioner testified that he pleaded guilty in reliance on this alleged agreement with the prosecuting attorney. Mr. Ramos, in contrast, testified that he was an experienced criminal defense attorney who had represented a number of non-citizens. During such representation, Mr. Ramos testified that it was his custom to notify his client of possible deportation consequences before accepting a plea. Furthermore, Mr. Ramos recalled that he represented petitioner during a lengthy detention hearing, before which he had specifically discussed possible deportation consequences of his crime.

The court finds, as did the magistrate judge, Mr. Ramos's testimony credible on this point. Similarly, the court finds petitioner's testimony, particularly that Mr. Ramos told petitioner of an agreement by the prosecuting attorney not to deport petitioner, not credible. The prosecuting attorney has no independent power to deport or not deport a defendant, a fact of which Mr. Ramos was undoubtedly aware. It is thus unlikely that the prosecuting attorney agreed to such a deal, or that Mr. Ramos relayed this to petitioner. The court finds testimony that Mr. Ramos told petitioner that the prosecuting attorney had incorporated an agreement not to deport petitioner into the plea agreement not to be credible.

9

The sworn statements made during petitioner's Rule 11 hearing, wherein he admitted he was satisfied with his representation and that the plea agreement represented his entire agreement with the government, further undermine his claims and support Mr. Ramos's testimony. "[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false . . . ." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir 2005) (internal quotation marks omitted). Petitioner testified that he read the plea agreement before signing it, and Mr. Ramos testified that he went over the agreement in depth with petitioner. The plea agreement did not mention any agreement not to deport petitioner.

In short, petitioner's claim rests upon this court overruling the magistrate judge's credibility finding, regardless of Padilla's potential retroactivity. The magistrate judge had the benefit of the evidentiary hearing, while this court does not. Upon a review of the hearing transcript and petitioner's objections, this court adopts the magistrate judge's factual findings as its own. The court therefore grants the government's motion to dismiss.

2.  Petitioner's Motion for Clarification

Petitioner moves the court to clarify his sentence, based on comments made by the undersigned during petitioner's sentencing hearing. Petitioner argues that as part of his sentence, the undersigned agreed that petitioner should not be deported.

Petitioner's characterization of the court's order, however, is not accurate. Though the court did mistakenly state that petitioner would not be subject to deportation, these statements were not a part of the court's order. The court sought to determine – not proclaim – petitioner's immigration status.

10

Moreover, under our tripartite system of government, whether to deport petitioner is not a power granted to the judicial branch. Rather, the legislative branch establishes the rules governing a non-citizen's stay in this country, and the executive branch enforces violations of these rules. The undersigned was without power under the Constitution to determine whether petitioner should be deported as part of his sentence.

The undersigned certainly regrets the mistaken statements at petitioner's sentencing hearing, but contrary to petitioner's assertions, these were never a part of the sentence or judgment in this case. Regardless of any such statements made at petitioner's sentencing hearing, the court finds that petitioner was informed of the possibility that he would be deported by Mr. Ramos, and that petitioner understood the plea agreement he signed, which did not mention any promise that petitioner would not be deported. A guilty plea is "a grave and solemn act" that cannot be withdrawn "simply on a lark." United States v. Thompson-Riviere, 561 F.3d 345, 347-48 (4th Cir. 2009). Petitioner's initial decision to plead guilty was made before any statements were made during his sentencing hearing. As such, these statements cannot be used to attack the guilty plea.

C.  Certificate of Appealability

The court must now determine whether petitioner is entitled to a certificate of appealability. Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides in pertinent part that a § 2255 applicant "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district

11

court is debatable or wrong and that any dispositive procedural ruling by the district court likewise is debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).

After reviewing the claims presented in the petition in light of the applicable standard, the court finds that petitioner has failed to meet the requirements for a certificate of appealability. Petitioner failed to make a "substantial showing" of the denial of a constitutional right because reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong. None of the issues are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, after thorough consideration of the M&R and relevant case law, and upon *de novo* review of those portions of the M&R to which objections were filed, the court ADOPTS the M&R (DE # 792) as its own and OVERRULES petitioner's objections. Accordingly, respondent's motion to dismiss petitioner's remaining claims (DE # 758) is GRANTED. Petitioner's motion to vacate (DE #744) is DENIED. Petitioner's motion for clarification (DE #800) is DENIED. The certificate of appealability is DENIED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 25 day of October, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge